**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 10a0708n.06

No. 09-2459

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

**Nov 15, 2010**

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| **Plaintiff-Appellee,** | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF MICHIGAN |
| LELAND J. SMART, JR., | ) | |
| | ) | |
| **Defendant-Appellant.** | ) | **O P I N I O N** |
| _____ | ) | |

**Before:  BOGGS, MOORE, and SUTTON, Circuit Judges.**

**KAREN NELSON MOORE, Circuit Judge.**  Defendant Leland Smart appeals the district court's modification of his supervised release conditions to include a condition of electronic monitoring by a Global Positioning System ("GPS") device for a period of six months.  Smart argues that the district court abused its discretion in ordering the condition under the circumstances of his case.  Because the six-month period for the GPS monitoring condition has ended, however, we **DISMISS** Smart's appeal as moot.

## I.  BACKGROUND & PROCEDURE

In 1993, Smart pleaded guilty to violating the federal felon-in-possession-of-a-firearm statute, 18 U.S.C. § 922(g)(1).  Dist. Ct. Dkt. Doc. ("Doc.") 21 (Judgment at 1).  Smart admitted that he used the firearm that he was charged with possessing to rob his doctor's office and that, in an incident unrelated to his felon-in-possession conviction, he and a friend shot out the windows of a Planned

Parenthood clinic. Doc. 37 (Sent. Tr. July 8, 1993, at 34–36, 39). He was sentenced to 225 months in prison and five years of supervised release. Doc. 21 (Judgment at 2–3).

Smart's term of imprisonment ended on June 13, 2009. Doc. 53 (Sent. Tr. Nov. 9, 2009, at 4–5). On July 2, 2009, the probation officer petitioned the district court to modify Smart's conditions of supervised release, proposing to add conditions that he (1) "not associate with any individual or group whose beliefs are associated with white supremacists or any group classified as a special threat group"; (2) "not have any contact with individuals who support the use of violence against reproductive health care providers and/or facilities"; (3) "not be within 1,000 feet of any facility including, but not limited to, a hospital, clinic, women's resource center, reproductive health service provider or building where abortions are performed"; (4) be "placed on home confinement with electronic monitoring for a period of six months and [be] required to remain at home at all times except for preapproved and scheduled absences for employment, education, religious activity, treatment, attorney visits, court appearances, Court-ordered obligations, or other activities approved in advance by the probation officer"; and (5) "reside at a residence approved in advance by the probation officer." Doc. 28 (Probation Pet. and Order July 1, 2009, at 1–2).

The probation officer noted that, although Smart had not committed any violations of his supervised-release conditions as of the date of the report, he "has a history of association with white supremacist groups and radical anti-abortion groups" and was "previously . . . involved in shooting into an abortion clinic." *Id.* at 2. The officer stated that she had received information that "Smart continues to associate with people who are anti-abortion/pro life, who condone and use violence and

2

illegal activity" and that he was under investigation for new criminal charges.[1] *Id.* The officer

concluded that the proposed conditions of "intensive supervision" were requested "to best supervise

Mr. Smart and in the interest of his own safety and that of the community." *Id.*

On August 19, 2009, Smart agreed to the imposition of the additional proposed conditions[2]

except the condition of home confinement with electronic monitoring. Doc. 43 (Probation Pet. and

Order Aug. 20, 2009, at 4). The district court held hearings regarding this remaining proposed

condition on November 2, 2009 and November 9, 2009. Doc. 52 (Sent. Tr. Nov. 2, 2009); Doc. 53

(Sent. Tr. Nov. 9, 2009). At the conclusion of the November 9, 2009 hearing, the district court

decided to "place [Smart] on a global positioning monitoring for a period of six months." Doc. 53

(Sent. Tr. Nov. 9, 2009, at 61). The district court stated that "the protection of the public

warrant[ed]" the GPS monitoring condition "to make sure that Mr. Smart [was] in compliance with

[the special site-specific] conditions of supervised release" to which he had agreed. *Id.* at 62.

After the district court announced its decision, Smart asked the court to stay execution of the

modification pending appeal, but the district court denied the request. *Id*. On November 13, 2009,

the district court entered a written order modifying Smart's conditions of supervised release to place

---

[1]The information was largely from a "threat profile" that the probation officer received from a Florida agency, in which Smart was classified as a "domestic terrorist" for his involvement in the anti-abortion movement in the 1990s. Doc. 53 (Sent. Tr. Nov. 9, 2009, at 13). The information provided to the probation officer that Smart was under investigation for new charges was later determined erroneous. *Id.* at 23–24.

[2]The district court discussed the other special conditions to which Smart agreed as conditions imposed because of the "site specific" nature of Smart's crimes and associations—i.e., involving abortion clinics and the anti-abortion movement. Doc. 53 (Sent. Tr. Nov. 9, 2009, at 57).

3

him on electronic monitoring, including the use of GPS technology, for a period of six months, during which time Smart was to be on home confinement. Doc. 50 (Order Modifying Conditions of Supervision). Pursuant to the district court's order, Smart was placed on GPS monitoring on November 19, 2009. Supervised Release Violation Report at 2.

Smart appealed the imposition of the condition ("Condition 10") on November 13, 2009. Doc. 51 (Notice of Appeal). On November 23, 2009, Smart filed a motion in this court to stay the district court order pending resolution of the appeal, or in the alternative, to stay the order temporarily until the transcripts of the two district court hearings were completed. The government did not oppose a temporary stay pending completion of the transcripts. Gov't Resp. at 2. Upon completion of the transcripts, this court entered a temporary stay on February 12, 2010, to provide Smart fourteen days to renew his stay motion. Pursuant to the stay, Smart's GPS monitoring device was removed on February 12, 2010. Supervised Release Violation Report at 2.

Smart filed a renewed motion to stay on March 1, 2010, and the government filed its response on March 12, 2010. On May 17, 2010, this court denied Smart's renewed motion to stay and vacated the February 12, 2010 temporary stay. Smart was therefore placed on the GPS monitoring again on June 3, 2010. Supervised Release Violation Report at 2. On July 1, 2010, Smart filed his reply brief and a Motion to Expedite Consideration of Appeal, stating that he had been on GPS monitoring for approximately three months and that without expedited consideration, the district court's order would likely expire before this court could complete its review. This court granted the motion to expedite on July 7, 2010.

4

Also on July 1, 2010, the probation office petitioned the district court to modify the conditions of Smart's supervision pursuant to an alleged violation of his supervised release conditions. Doc. 58 (Pet. for Warrant or Summons for Offender Under Supervision). The petition alleged that Smart tested positive for marijuana on June 19, 2010, and that, during a meeting with his probation officer on June 28, 2010, Smart admitted to using marijuana. *Id.* at 2–3. The probation officer recommended that the conditions of supervised release be modified to continue Condition 10—home detention with electronic monitoring—until January 15, 2011. *Id.* at 3. Smart waived his right to a hearing on the requested modification and agreed to the modification. Doc. 65 (Order Modifying Conditions of Supervision at 3). The district court, therefore, entered an order on August 11, 2010, modifying Smart's conditions of supervision as requested by the probation officer. *Id.* at 1–2.

On October 15, 2010, the government submitted a letter to this court pursuant to Federal Rule of Appellate Procedure 28(j), arguing that because the original six-month GPS monitoring period imposed in the November 13, 2009 order would have expired on September 7, 2010, Smart's appeal is now moot. The government also argued that Smart has waived the right to challenge the August 11, 2010 order, which extended the time period for the monitoring condition, because Smart agreed to and has not appealed that order. At oral argument, Smart's counsel stated that Smart is appealing only the November 13, 2009 order that originally imposed the GPS monitoring condition.

## II. ANALYSIS

Smart does not challenge whether the district court had the power to impose a GPS monitoring condition, but rather disputes the propriety of imposing such a requirement in his circumstances.[3]  Appellant Br. at 23; Doc. 53 (Sent. Tr. Nov. 9, 2009, at 44).  Smart argues that he is "a model supervisee with no issues whatsoever," Appellant Br. at 2, and that he "had not advocated violence against any persons or facilities related to providing abortion services or counseling or engaged in any other violence against such persons or facilities in more than seventeen years." *Id.* at 8.  He argues that the imposition of GPS monitoring "is punitive and is a substantial infringement on [his] liberty," *id.* at 20, and that it is "a greater deprivation of [his] liberty than is reasonably necessary to achieve the purposes of supervised release as set out in 18 U.S.C. § 3583(e)." *Id.* at 23.  For example, at oral argument, Smart's counsel stated that Smart was fired from a job because the GPS device did not function properly when he was within the employer's facility.  The government argues that the district court did not abuse its discretion because the condition was "reasonably related to the dual goals of probation:  [Smart's] rehabilitation and the protection of the public."  Appellee Br. at 7.

---

[3]Smart also alleges that the district court imposed additional conditions of home confinement and payment of costs in its written order that it did not impose orally at the hearing.  *See* Appellant Br. at 10–11.  Smart raises the issue in his statement of facts, but does not further develop the issue in the argument section of his brief, nor in his reply brief.  We deem waived "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation." *United States v. Reed*, 167 F.3d 984, 993 (6th Cir.), *cert. denied*, 528 U.S. 897 (1999).  However, we note that to the extent that there remains any ambiguity regarding the condition, Smart has "the right to apply to the sentencing court for a clarification." FED. R. CRIM. P. 32.1 1979 Advisory Committee Notes.

We must start with the mootness issue because "'[w]e have no power to adjudicate disputes which are moot.'" *Rosales-Garcia v. Holland*, 322 F.3d 386, 394 (6th Cir.) (en banc) (quoting *McPherson v. Mich. High Sch. Athletic Ass'n, Inc.*, 119 F.3d 453, 458 (6th Cir. 1997) (en banc)), *cert. denied*, 539 U.S. 941 (2003). "'Under Article III of the Constitution, our jurisdiction extends only to actual cases and controversies.'" *Id.* (quoting *McPherson*, 119 F.3d at 458). "A case becomes moot when the issues presented are no longer live or parties lack a legally cognizable interest in the outcome." *United States v. City of Detroit*, 401 F.3d 448, 450 (6th Cir. 2005) (internal quotation marks omitted). "Even if a case was not moot in the district court, if it becomes moot on appeal, we must dismiss the case unless 'the relief sought would, if granted, make a difference to the legal interests of the parties.'" *Rosales-Garcia*, 322 F.3d at 394 (quoting *McPherson*, 119 F.3d at 458).

There is no dispute that the six-month period for the monitoring condition imposed by the November 13, 2009 order has expired. "If a [defendant] does not challenge the validity of the conviction but rather only challenges his sentence or some aspect of it, the request for relief is moot once the challenged portion of the sentence has expired." *United States v. Goldberg*, 239 F. App'x 993, 994 (6th Cir. 2007) (unpublished opinion) (internal quotation marks omitted); *see also United States v. Waltanen*, 356 F. App'x 848, 851 (6th Cir. 2009) (unpublished opinion) (same). When asked to address the mootness issue at oral argument, Smart's counsel argued that the appeal of the GPS monitoring condition should not be dismissed for mootness under the exception for cases that are capable of repetition, yet evading review. Counsel argued that Smart could be subjected to a

series of GPS monitoring conditions, each of a short duration and each expiring before this court could complete its review.

"[T]he [Supreme] Court has long recognized an exception to the mootness doctrine for cases that are 'capable of repetition, yet evading review.'" *Rosales-Garcia*, 322 F.3d at 396. The exception, however, "applies only in exceptional situations." *Spencer v. Kemna*, 523 U.S. 1, 17 (1998) (internal quotation marks omitted). It "applies where '(1) the challenged action [is] in its duration too short to be fully litigated prior to cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subject to the same action again.'" *Rosales-Garcia*, 322 F.3d at 396 (alterations in original) (quoting *Spencer*, 523 U.S. at 17); *see also Suster v. Marshall*, 149 F.3d 523, 527 (6th Cir. 1998) (same), *cert. denied*, 525 U.S. 1114 (1999).

We conclude that the imposition of GPS monitoring as a condition of Smart's supervised release does not fall under the "capable of repetition, yet evading review" exception to mootness. With respect to the test's first prong, although the district court imposed the challenged condition for a short six-month duration, a GPS monitoring condition might not be imposed on Smart in the future for a duration so short that it could not be fully litigated prior to expiration. *See Spencer*, 523 U.S. at 18 (observing that petitioner who was challenging his parole revocation "ha[d] not shown . . . that the time between parole revocation and expiration of sentence is always so short as to evade review."). Additionally, defendants who seek to challenge the imposition of a GPS monitoring condition can move first in the district court and then, if unsuccessful, in this court for a stay of the condition pending appeal. FED. R. APP. P. 8(c); FED. R. CRIM. P. 38; *see also United States v. Ritter*,

118 F.3d 502, 504 (6th Cir. 1997) (noting that appellant "successfully moved this court for a stay of the [challenged supervised release] condition pending appeal"). The Supreme Court has stated explicitly that "it 'has always been held, . . . that as part of its traditional equipment for the administration of justice, a federal court can stay the enforcement of a judgment pending the outcome of an appeal'" because otherwise the appellate "court's decision may in some cases come too late for the party seeking review." *Nken v. Holder*, --- U.S. ---, 129 S. Ct. 1749, 1754 (2009) (quoting *Scripps-Howard Radio, Inc. v. FCC*, 316 U.S. 4, 9–10 (1942)).

With respect to the second prong of the test, Smart has not demonstrated that there is a reasonable expectation that he will be subject to GPS monitoring again during his supervised-release term. The district court's rationale for originally imposing the GPS monitoring—to ensure compliance with Smart's other site-specific conditions—is still applicable because Smart remains subject to the other special conditions. But at oral argument, Smart's counsel advised this court that Smart is not currently being monitored by GPS even though the electronic monitoring to which he agreed in the August 11, 2010 order, following his supervised-release violation, could authorize monitoring by GPS. We thus have no reason to expect that the district court will modify Smart's conditions of supervised release again in the future to impose GPS monitoring. Therefore, as explained above, this case does not meet the mootness exception for those cases "capable of repetition, yet evading review."

## III. CONCLUSION

Because the challenged six-month period of GPS monitoring has expired and the case does not meet the "capable of repetition, yet evading review" exception, we **DISMISS** Smart's appeal as moot. We therefore express no views on the merits of GPS monitoring as a condition of supervised release.